Matthew C. Williams, ISB #6271
Valley County Prosecuting Attorney
P.O. Box 1350
Cascade, ID  83611
Telephone: (208) 382-7120
Facsimile: (208) 382-7124
mwilliams@co.valley.id.us

Christopher H. Meyer, ISB #4461
Martin C. Hendrickson, ISB #5876
GIVENS PURSLEY LLP
601 W. Bannock St.
Post Office Box 2720
Boise, Idaho  83701-2720
Telephone:  208-388-1200
Facsimile:  208-388-1300
chrismeyer@givenspursley.com
mch@givenspursley.com

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KAREN WHITE, an individual, and ELKHORN, LLC, a Florida limited liability company,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>VALLEY COUNTY, a political subdivision of the State of Idaho,<br><br>　　　　　　　Defendant. | Case No. 1:09-cv-00494<br><br>**VALLEY COUNTY'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. II

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.    Plaintiff White is not a proper party ................................................................. 2

    II.    Diversity jurisdiction is doubtful. ...................................................................... 2

    III.    Plaintiffs' federal claims must be brought under § 1983. ....................................... 3

        A.    The Declaratory Judgment Act provides jurisdiction, not a cause of action. ....................................................................................... 3

        B.    Where § 1983 is available, it is the exclusive means of raising a constitutional claim. ........................................................................... 3

    IV.    Plaintiffs have not met the two special "ripeness" requirements of *Williamson County*. ................................................................................... 5

        A.    *Williamson County* Test 1: The "final decision" requirement applies because this is a regulatory taking, not a physical taking. .............. 5

        B.    *Williamson County* Test 2: The requirement to employ state inverse condemnation procedures applies. ................................................. 7

    V.    Plaintiffs' claims fail tests established under Idaho case law. ............................... 8

        A.    Plaintiffs failed to exhaust, and neither exception applies. ......................... 8

            (1)    Exhaustion exception 1: The "outside the agency's authority" does not apply. ................................................................ 8

            (2)    Exhaustion exception 2: Plaintiffs cannot meet the "interests of justice" exception. ................................................... 10

            (3)    Administrative remedies were available, but were not used. ......... 10

        B.    Plaintiffs' actions were voluntary. ......................................................... 11

    VI.    Plaintiffs' request for relief with respect to future actions is not ripe. ................. 13

    VII.    Equitable principles prevent Plaintiffs from obtaining the remedies they seek here. ...................................................................................................... 14

    VIII.    This lawsuit is barred by the statute of limitations. ........................................... 14

CERTIFICATE OF SERVICE ................................................................................................ 16

**TABLE OF AUTHORITIES**

**Cases**

*American Falls Reservoir Dist. No. 2 v. IDWR*, 143 Idaho 862, 154 P.3d 433 (2007) ........ 8, 9, 10
*Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704 (9th Cir. 1992) .............................. 3, 4, 5
*Carlos v. Adamy*, 1996 WL 210019 (N.D. Ill. 1996) ............................................................................ 2
*Daniel v. County of Santa Barbara*, 288 F.3d 375 (9th Cir. 2002), *cert. denied*, 537
 U.S. 973 ............................................................................................................................ 7, 8
*Dolan v. City of Tigard*, 512 U.S. 374 (1994) ............................................................................... 6
*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*,
 210 Cal.App.3d 1353, 258 Cal. Rptr. 893 (1989) ............................................................. 4, 5
*First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482
 U.S. 304 (1987) ...................................................................................................................... 3
*Golden Gate Hotel Ass'n v. City and County of San Francisco*, 18 F.3d 1482 (9th Cir.
 1994) ...................................................................................................................................... 3
*Harris v. State, ex rel. Kempthorne*, 147 Idaho 401, 210 P.3d 86 (2009) .................................. 15
*Jett v. Dallas Independent School Dist.*, 491 U.S. 701 (1989) ..................................................... 4
*JMTR Enterprises, LLC v. Duchin*, 42 F. Supp. 2d 87 (D. Mass. 1999) ....................................... 2
*Kelley Property Development, Inc. v. Town of Lebanon*, 627 A.2d 909 (Conn. 1993) ................ 5
*KMST, LLC v. County of Ada*, 138 Idaho 577, 67 P.3d 56 (2003) ................................... 8, 11, 12
*Lawyer v. Hilton Head Public Service Dist. No. 1*, 220 F.3d 298 (4th Cir. 2000) ........................ 5
*McCuskey v. Canyon County Comm'rs*, 128 Idaho 213, 912 P.2d 100 (1996) .......................... 15
*Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) ............................................................. 4
*Nollan v. California Coastal Commission*, 483 U.S. 825 (1987) ................................................. 6
*Rueth v. State*, 103 Idaho 74, 644 P.2d 1333 (1982) .................................................................. 15
*Smith v. Dep't of Public Health*, 410 N.W.2d 749 (Mich. 1987) .................................................. 5
*Thomas v. Shipka*, 818 F.2d 496 (6th Cir. 1987) .......................................................................... 5
*Wax 'n Works v. City of St. Paul*, 213 F.3d 1016 (8th Cir. 2000) .................................................. 5
*White v. Bannock County Commissioners*, 139 Idaho 396, 80 P.3d 332 (2003) ..................... 8, 10
*Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*,
 473 U.S. 172 (1985) .................................................................................................... 6, 7, 8

**Statutes**

28 U.S.C. § 1331 .............................................................................................................................. 3
28 U.S.C. § 1343(a)(3) .................................................................................................................... 3
28 U.S.C. § 1367(c) ........................................................................................................................ 8
28 U.S.C. § 2201 .............................................................................................................................. 3
42 U.S.C. § 1983 ................................................................................................................ 3, 4, 5, 14
Fed. R. Civ. P. 23.1 .......................................................................................................................... 2
Idaho Code § 30-1-742 .................................................................................................................... 2
Idaho Code § 5-216 ........................................................................................................................ 14
Idaho Code §§ 67-8201 to 67-8216 ................................................................................................ 1
Land Use and Development Ordinance (LUDO) .............................................................. 11, 12, 13
Local Land Use Planning Act (LLUPA), Idaho Code §§ 67-6501 to 67-6537 .......................... 11

**Other Authorities**

26 Am. Jur. 2d. *Eminent Domain* §10 (2004) .................................................................................. 6

Bley, *Use of the Civil Rights Acts to Recover Damages in Land Use Cases*, ALI-ABA, § III(B) (2001) ............................................................................................................. 4

Cohen, *Citizenship of Limited Liability Companies for Diversity Jurisdiction*, 6 J. Small & Emerging Bus. L. 435 (2002) ................................................................................. 2

Madry, *Private Accountability and the Fourteenth Amendment; State Action, Federalism and the Courts*, 59 Missouri L. Rev. 499, 551 (1994) ......................................... 5

Nahmod, *Civil Rights and Civil Liberties Litigation:  The Law of Section 1983*, § 6:59 (2010) ................................................................................................................................... 5

Nutter, Note, *Two Approaches to Determine Whether an Implied Cause of Action under the Constitution is Necessary:  The Changing Scope of the Bivens Action*, 19 Ga. L. Rev. 683 (1985) ..................................................................................................... 5

Schwartz, *Section 1983 Litigation Claims and Defenses*, § 1.05 (2010) ......................................... 4

## INTRODUCTION

This is Valley County's ("County") Reply Brief in support of *Valley County's Motion for Summary Judgment* (Document 47). It follows *Valley County's Opening Brief in Support of Motion for Summary Judgment* (Document 48) ("Opening Brief") and replies to *Plaintiffs' Memorandum in Opposition to Summary Judgment* (Document 63) ("Response Brief").

In Idaho, certain impact fees are illegal taxes under Idaho's Constitution unless imposed pursuant to an ordinance compliant with the Idaho Development Impact Fee Act ("IDIFA"), Idaho Code §§ 67-8201 to 67-8216. Valley County did not enact an IDIFA-compliant ordinance, because, at the time, it believed in good faith that none was required. Recent lawsuits involving other municipalities have successfully challenged impact fees. Accordingly, to be on the safe side, the County is now exploring enactment of a new IDIFA-compliant ordinance. But there is no need to determine whether the Conditional Use Permit ("CUP") and Road Development Agreement ("Agreement") at issue here imposed illegal taxes. The question presented in the pending motion is whether Plaintiffs accepted the CUP and entered into the Agreement without complaint, avoided opportunities to raise the issue administratively, waited too long to challenge, and ultimately brought their challenge in the wrong forum.[1]

This case has nothing to do with due process. Plaintiffs had plenty of process. Indeed, part of the County's defense is that Plaintiffs failed to exhaust the remedies available to them. Plaintiffs' so-called due process claim is based on the contention is that the County should have enacted an IDIFA-compliant impact fee ordinance and that, if it had done so, they would have been given even more process. But counties are not required to enact ordinances under IDIFA. Thus, the question is, given that Valley County decided not to enact an ordinance under IDIFA at

---

[1] In this brief, we use the term Plaintiffs to refer to the current Plaintiffs and/or the original developers.

the time, was it unlawful for it to issue a CUP requiring an Agreement? That is purely a state constitutional law question which, if answered in the affirmative, would give rise to an unconstitutional *per se* regulatory taking under the state and federal constitutions. But there is no need to reach the merits of this claim if the defenses in the pending motion prevail.

## ARGUMENT

### I. PLAINTIFF WHITE IS NOT A PROPER PARTY

Plaintiffs' contention that Ms. White has not expressly conveyed her interest in this litigation to Elkhorn is beside the point. Plaintiffs' discovery responses constitute an admission that she holds, at most, an ownership or other financial interest in the company that now owns the development. Unless she expressly retained ownership of her takings claim, which she has not claimed to do, that stick is now in the bundle held by Elkhorn. There are detailed requirements for stockholder derivative suits (which also apply to limited liability companies), Fed. R. Civ. P. 23.1; Idaho Code § 30-1-742, and Ms. White has not met them. Accordingly, Elkhorn is the proper plaintiff, not Ms. White.

### II. DIVERSITY JURISDICTION IS DOUBTFUL.

Elkhorn's bare allegation that it is incorporated in Florida is insufficient to support diversity jurisdiction. Additional documentation provided by Plaintiffs now shows that Ms. White and other members of Elkhorn are citizens of Florida. The remaining question is whether Elkhorn's principal place of business also should be considered. There is a split of authority on this point.[2] Even if the "persons composing" rule is followed, the purposes of diversity

---

[2] *Carlos v. Adamy*, 1996 WL 210019 (N.D. Ill. 1996), *3 n.4 (in dictum); *JMTR Enterprises, LLC v. Duchin*, 42 F. Supp. 2d 87 (D. Mass. 1999). The departure from the entity rule (which considers principal place of business) has been strongly criticized. *E.g.,* Debra R. Cohen, *Citizenship of Limited Liability Companies for Diversity Jurisdiction*, 6 J. Small & Emerging Bus. L. 435 (2002). The minimal case law available may tilt in favor of diversity jurisdiction, but the "place of business" question remains unsettled and this is a case of first impression in the Ninth Circuit.

jurisdiction logically dictate that the principal place of business should be considered <u>in addition</u> to the citizenship of the members. Accordingly, there is room for application of common sense. By all appearances, Elkhorn's principal (and only) place of business is Idaho, and Plaintiffs have not plead otherwise—thus destroying diversity. Federal question jurisdiction is not contested.

### III. PLAINTIFFS' FEDERAL CLAIMS MUST BE BROUGHT UNDER § 1983.

#### A. The Declaratory Judgment Act provides jurisdiction, not a cause of action.

Plaintiffs continue to rely on the Declaratory Judgment Act, 28 U.S.C. § 2201, as the basis for a private cause of action. This does not work. There is a difference between a statute that provides jurisdiction (such as the Declaratory Judgment Act) and a statute that provides a private cause of action (such as 42 U.S.C. § 1983).[3] Plaintiffs need both jurisdiction and a cause of action. The Declaratory Judgment Act provides only one. They must look to § 1983 for the latter.

#### B. Where § 1983 is available, it is the exclusive means of raising a constitutional claim.

Plaintiffs fail to address the settled Ninth Circuit precedent on this point in *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992), the authorities relied on in *Azul-Pacifico*, or subsequent cases such as *Golden Gate Hotel Ass'n v. City and County of San Francisco*, 18 F.3d 1482 (9th Cir. 1994). Instead, Plaintiffs rely solely on *First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304, 314-15 (1987). Although this case contains some remarkably broad language regarding takings claims, it does not address the particular question of whether takings claims may be brought independent of

---

[3] "[Section] 1983 authorizes the claim for relief. It is not, however, a jurisdiction-conferring statute. It "does not by itself confer jurisdiction upon the federal district courts to adjudicate" the claims it authorizes. Therefore, a party seeking to assert a § 1983 claim in federal court must invoke a separate jurisdiction-conferring statute, such as 28 U.S.C. § 1331 or 28 U.S.C. § 1343(a)(3)." Martin A. Schwartz, *Section 1983 Litigation Claims and Defenses*, § 1.05 (2010) (available on Westlaw as SNETLCD s 1.05) (emphasis supplied).

§ 1983. The opinion does not even mention § 1983, and the dissent mentions it only in another context. Nor do the parties' briefs. Nor does the case on remand, *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 210 Cal.App.3d 1353, 258 Cal. Rptr. 893 (1989).

Given that § 1983 was not discussed, it is fair to say that *First English* is not on point. In any event, the commentators have recognized that *First English* is not definitive. "In the wake of *Monell* and the provision of a remedy under § 1983 there is a split in authority as to whether a right of action based on the Fourteenth Amendment provides a claim for relief sufficient to invoke the federal question jurisdiction of the federal courts." Kenneth B. Bley, *Use of the Civil Rights Acts to Recover Damages in Land Use Cases*, ALI-ABA, § III(B) (2001) (available on Westlaw at SF64 ALI-ABA 435) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978)). The cases and commentary, however, overwhelmingly support the rule established in the Ninth Circuit by *Azul-Pacifico* and other cases. For example:

> Although § 1983 provides express authorization for the assertion of federal constitutional claims against state actors, the Supreme Court has endorsed the view, expressed in several circuit court decisions, that limitations which exist under § 1983 may not be avoided by assertions of *Bivens*-type claims against state and local defendants. [Footnote citing *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 735 (1989).] Thus, the availability of the § 1983 remedy precludes reliance upon the *Bivens* doctrine.
> . . .
> Whether § 1983 preempts an alternative constitutional or statutory claim depends upon congressional intent.
> . . . As discussed below, it is settled that § 1983 operates to preempt alternative *Bivens*-type claims asserted directly under the federal Constitution.
> . . .
> The federal courts have consistently adhered to the principle that § 1983 preempts *Bivens*-type remedies against those who acted under color of state law. [Footnote citing *Azul-Pacifico* among others.]

Martin A. Schwartz, *Section 1983 Litigation Claims and Defenses*, § 1.05 (2010) (available on

Westlaw as SNETLCD s 1.05).[4]  The authority on this point, none of which is addressed by Plaintiffs, is overwhelming.[5]  All of these cited authorities are post-*First English*.  In any event, *Azul-Pacifico* is crystal clear, directly on point, and the controlling law in the Ninth Circuit.

Given that Plaintiffs have affirmatively, definitively, and repeatedly stated that they are not pursuing any § 1983 claims, they have no cause of action for their federal claims.  For this reason alone, the federal claims should be dismissed.  If Plaintiffs are allowed to proceed under § 1983, their claims fail for the reasons discussed below.

### IV. PLAINTIFFS HAVE NOT MET THE TWO SPECIAL "RIPENESS" REQUIREMENTS OF *WILLIAMSON COUNTY*.

#### A. *Williamson County* Test 1:  The "final decision" requirement applies because this is a regulatory taking, not a physical taking.

---

[4] Cases from other jurisdictions reaching the same conclusion as *Azul-Pacifico* include the following: *Smith v. Dep't of Public Health*, 410 N.W.2d 749, 787 (Mich. 1987) ("Thus, both *Chappell* and *Bush* signal a retrenchment from the broad remedial scope evident in the Court's earlier *Bivens*, *Davis*, and *Carlson* opinions. Both *Chappell* and *Bush* suggest greater caution and increased willingness on the part of the Court to defer to Congress on the question whether to create damages remedies for violations of the federal constitution."); *Kelley Property Development, Inc. v. Town of Lebanon*, 627 A.2d 909, 921 (Conn. 1993) ("In its current configuration, the *Bivens* line of United States Supreme Court cases thus appears to require a would be *Bivens* plaintiff to establish that he or she would lack any remedy for alleged constitutional injuries if a damages remedy were not created.  It is no longer sufficient under federal law to allege that the available statutory or administrative mechanisms do not afford as complete a remedy as a *Bivens* action would provide."); *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000) (Plaintiff asserted claim directly under Fourteenth Amendment; court treated it as under § 1983 and denied relief on exhaustion/ripeness grounds); *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987), *vacated on other grounds & remanded*, 488 U.S. 1036 (1989) (when § 1983 action is precluded by statute of limitations, plaintiff may not bring separate action directly under the Constitution).  The only case we have encountered that adopts Plaintiffs' view of *First English*, albeit in dictum, is *Lawyer v. Hilton Head Public Service Dist. No. 1*, 220 F.3d 298 (4th Cir. 2000).  Even this case, however, recognizes that this is a departure from the *Azul-Pacifico* line of precedent:  "Other courts, however, have held, in apparent conflict with *First English*, that a violation of the Takings Clause can only be redressed through a claim under § 1983."  *Lawyer* at 303 n.4.

[5] Another hornbook on § 1983 notes a variety of federal cases reaching the same conclusion, concluding, "The Ninth Circuit asserted that Fourteenth Amendment actions for damages against state defendants are precluded by the availability of § 1983."  Sheldon Nahmod, *Civil Rights and Civil Liberties Litigation:  The Law of Section 1983*, § 6:59 (2010) (available on Westlaw at CIVLIBLIT § 6:59).  Another law professor concludes:  "Under *Bivens*, the courts are to refrain from a *Bivens*-type action for damages only when Congress has created an alternative remedy.  Originally, the Court withheld a *Bivens* damages remedy, because unnecessary, only when the remedy provided by Congress was equally effective.  Since *Bivens*, however, the Court has retreated from that principle and now refuses a damages action whenever Congress has made available some relief even if not equal to the damages remedy."  Alan R. Madry, *Private Accountability and the Fourteenth Amendment; State Action, Federalism and the Courts*, 59 Missouri L. Rev. 499, 551 (1994) (footnote cites David C. Nutter, Note, *Two Approaches to Determine Whether an Implied Cause of Action under the Constitution is Necessary: The Changing Scope of the Bivens Action*, 19 Ga. L. Rev. 683 (1985)).

Plaintiffs acknowledge that *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) establishes two special "ripeness" tests applicable to all federal regulatory takings claims. Response Brief at 20-21. The first is the "final decision" requirement. This means that Plaintiffs must use reasonably available opportunities to raise their concerns at the administrative level. Plaintiffs did not do so (see Section V.A(3) at page 10). Their defense is that *Williamson County* does not apply to them because this is a physical taking, not a regulatory taking. Response Brief at 20-24.

The difference between physical takings and regulatory takings is well-established black-letter law, which the County has addressed before. Opening Brief at 15 n.20; County's Surreply (Document 30) at 3-5. Plaintiffs offer nothing in response. In a physical taking, the government forcibly appropriates the person's property. There is no *quid pro quo* and the property owner cannot say, "No thanks." Exactions are different. They occur when the plaintiff wants something from the government (*e.g.*, a permit) and the government seeks to exact something from the plaintiff (*e.g.*, an easement). When the government goes too far, that is a taking. The identifying factor in an exaction is that the government takes the property by leveraging its regulatory authority, not by fiat. The regulated person could avoid the exaction by declining the permit. For this reason, exactions are treated as a subspecies of regulatory takings, even when the exaction involves land or money.[6] Because this case involves an alleged regulatory taking, the physical takings exception to *Williamson County* does not apply.

---

[6] "The government affects a physical taking only where it <u>requires</u> the landowner to submit to the physical occupation of his or her land." 26 Am. Jur. 2d. *Eminent Domain* §10 (2004) (emphasis supplied). Exactions in land use cases are discussed under the section on <u>regulatory</u> takings. *Id*. § 16. This black letter rule derives from many cases, notably *Lingle v. Chevron USA, Inc.*, 544 U.S. 528, 546-47 (2005) (citing *Nollan v. California Coastal Commission*, 483 U.S. 825, 831-32 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994)). In one case, the Ninth Circuit struggled with this more than necessary, we think, but came down the same way: "[The] claims arising out of the exaction of the offers to dedicate can plausibly be characterized as either regulatory or physical takings. . . . We think it most plausible to characterize [the] claims as alleged regulatory rather than physical takings." *Daniel v. County of Santa Barbara*, 288 F.3d 375, 380 (9th Cir. 2002), *cert. denied*, 537 U.S. 973.

### B.   *Williamson County* Test 2:  The requirement to employ state inverse condemnation procedures applies.

Plaintiffs concede that *Williamson County* requires takings litigants to employ state inverse condemnation proceedings before going to federal court.  They say this does not apply because this is a diversity case.  This makes no sense.  At all events, their federal constitutional claims are questions of federal law.

Next Plaintiffs argue that this second test does not apply to their due process claims.  The problem is they have no independent due process claim; it is a meaningless restatement of the takings claim in an effort to avoid *Williamson County*.[7]  See discussion in the Introduction.

Plaintiffs' attempt to end-run *Williamson County* is also similar to the end-run tried unsuccessfully in *Daniel*, 288 F.3d at 384-85.  The plaintiffs in *Daniel* argued they were not subject to *Williamson County* because they were seeking injunctive and declaratory relief, not damages.  The *Daniel* court recognized an exception to the requirement to employ state inverse condemnation proceedings (where the plaintiff is making a facial challenge to a municipal ordinance), but found it not applicable there.  Nor is it applicable here.  Neither *Daniel* nor our case involve a challenge to an ordinance, much less a facial challenge.[8]  Where an action is alleged to be a regulatory taking, the remedy is not to stop the exaction, but to make the government pay for it.  Declaratory and injunctive relief is inappropriate.  *Daniel*, 288 F.3d at 385.

---

[7] Note also that Plaintiffs quote *Williamson County* out of context.  The statement that "the remedy for a regulation that goes too far, under the due process theory is not 'just compensation' but invalidation of the regulation," *Williamson County*, 473 U.S. at 197, was not the Court expressing its view, but the Court reciting the county's argument—which it found unnecessary to reach.  "We need not pass on the merits of petitioners' arguments, for even if viewed as a question of due process, respondent's claim is premature."  *Williamson County*, 473 U.S. at 199.

[8] Plaintiffs say in their Response Brief at 12 that they challenge ordinances, but they have not identified any defective ordinance—which is not surprising because no ordinance requires payment of impact fees.  Rather, Plaintiffs are challenging the CUP and its application through a Road Development Agreement.

In sum, Plaintiffs' attempt to sidestep *Williamson County* by characterizing this as a due process case or a case seeking injunctive and declaratory relief falls flat. This is a takings case, and Plaintiffs have not met the requirements to bring it in federal court. The Court should do as the district court did in *Daniel*, 288 F.3d at 380: Throw out the federal claims under *Williamson County*, and dismiss the supplemental state claims pursuant to 28 U.S.C. § 1367(c). If the Court reaches the state claim, it fails under state substantive and procedural law.

V.   **PLAINTIFFS' CLAIMS FAIL TESTS ESTABLISHED UNDER IDAHO CASE LAW.**

   A.   **Plaintiffs failed to exhaust, and neither exception applies.**

      (1)   **Exhaustion exception 1: The "outside the agency's authority" does not apply.**

Valley County explained in its Opening Brief at 18 n.24 that the exhaustion exception under *KMST, LLC v. County of Ada*, 138 Idaho 577, 67 P.3d 56 (2003), applies only to facial challenges. Plaintiffs dismiss our analysis of *White v. Bannock County Commissioners*, 139 Idaho 396, 80 P.3d 332 (2003) as a manipulation, Response Brief at 11, but fail to explain why. They cite only one case, *American Falls Reservoir Dist. No. 2 v. IDWR*, 143 Idaho 862, 870-72, 154 P.3d 433, 441-43 (2007). This case suggests that there may be some instances in which the exception could apply to an as applied challenge, but our case is not one of them.

The Court began by recognizing the exhaustion principle. "Additionally, a district court cannot properly engage in an 'as applied' constitutional analysis until a complete factual record has been developed." *American Falls*, 143 Idaho at 872, 154 P.3d at 443. "In this case, the district court recognized that parties must choose between either a facial or 'as applied' constitutional challenge and that an 'as applied' analysis is inappropriate before administrative

proceedings have been fully completed." *Id*. 143 Idaho at 871, 154 P.3d at 442.[9]

The Court then recognized the two standard exceptions to the exhaustion requirement. *American Falls*, 143 Idaho at 872, 154 P.3d at 443. However, the Court proceeded to sharply narrow the circumstances in which the first exception might apply to an as applied challenge. The Court explained that deciding whether an agency acted outside its authority sometimes calls for a "circuitous analysis." *Id*. If the agency's action was entirely beyond the scope of its authority, that is not circuitous and exhaustion is excused—in both facial and applied challenges. But where the nature of the action falls within the agency's broad authorization, exhaustion will be excused only for facial challenges. The Court concluded, 143 Idaho at 872, 154 P.3d at 443:

> Thus, the exception for when an agency exceeds its authority does not apply unless the CM [Conjunctive Management] Rules are facially unconstitutional. Therefore, this Court's review will be in terms of the CM Rules' constitutionality on their face and not in terms of the Rules' "threatened application" or "as applied."

This is a more nuanced statement of the simpler rule articulated by the County in its Opening Brief, but the end result is the same. Indeed, *American Falls* reinforces the County's main point. If an agency acts in a manner entirely outside its regulatory authority (for instance, if the County had no planning and zoning power), then the agency's action could be challenged without exhaustion. But where the governmental entity has regulatory authority to act on the subject matter and the only question is whether it has exercised that authority properly in a particular "as applied" action, then exhaustion is required.

Plaintiffs weakly contend that the exhaustion exception does not apply because their challenge is a facial challenge. But they offer only a bald conclusion and no analysis. Their entire argument is that "Valley County believes it has authority pursuant to its Land Use

---

[9] See *American Falls, 143 Idaho at 870-72, 154 P.3d at 441-43,* for a good discussion of the difference between facial and as-applied challenges under Idaho law.

Development Ordinance Section 3.03.07 to implement the Capital Improvements Program and Road Development Agreements." Response Brief at 12. But this is irrelevant. A facial challenge is not based on challenging a government's "belief" about its authority. In order to be a facial challenge, Plaintiffs must challenge a statute, rule, or ordinance—on its face. They have not. A challenge to a CUP is an as applied challenge, based on the County's actions implementing its perfectly benign land use ordinance.

### (2) Exhaustion exception 2: Plaintiffs cannot meet the "interests of justice" exception.

Had Plaintiffs timely challenged the County during the course of the CUP/development agreement process, who knows what might have happened? In light of the current challenge, the County has initiated a thorough review of its road funding process and, as previously noted, is considering new IDIFA-based ordinances. Instead, Plaintiffs waited for years, raising the issue after the money was spent and it was too late to reverse course. No public policy is served by encouraging such delinquent behavior.[10]

### (3) Administrative remedies were available, but were not used.

Plaintiffs contend in their Response Brief at 11-12 that even if the exhaustion rule applies, there were no remedies to exhaust because, at the time the CUP was issued, they did not know that the Agreement would include a requirement to pay for road impacts. The record disproves this. Admittedly, they did not know the amount, but they certainly knew that they would be expected to provide something. Be that as it may, Plaintiffs had ample opportunities to

---

[10] The Court in *American Falls* explained why exhaustion matters: "'Important policy considerations underlie the requirement for exhausting administrative remedies, such as providing the opportunity for mitigating or curing errors without judicial intervention, deferring to the administrative processes established by the Legislature and the administrative body, and the sense of comity for the quasi-judicial functions of the administrative body.'" *White v. Bannock County Comm'rs*, 139 Idaho 396, 401-02, 80 P.3d 332, 337-38 (2003)." *Id*. 143 Idaho at 872, 154 P.3d at 443. This statement reinforces the Court's reasoning on why the exhaustion exception does not apply to this as applied challenge. But it also explains why the other exception (when justice so requires) does not work here.

object once they were presented with a proposed Agreement that contemplated payments to which they objected.  Exhaustion is not limited to appealing a CUP.[11]  When presented with a proposal for an Agreement, Plaintiffs could have said it was unacceptable or simply not signed it.  This would have given the County an opportunity to insist on the terms or change them.

They also could have filed a petition with the County to reopen and amend the CUP.  Although there is no express provision in the ordinance for such an amendment, the County, having issued the CUP pursuant to LLUPA, has inherent authority to entertain a petition by the permit holder to change the permit based on changed conditions or new information.  In addition, there are specific remedial provisions the ordinance that could have been employed.[12]

In sum, Plaintiffs had ample opportunities, both formal and informal, for bringing their concerns to the County's attention.  The law of exhaustion requires that they employ at least one of them.  As the Court said in *KMST*, "[KMST] simply paid the impact fees in the amount initially calculated.  Having done so, it cannot now claim that the amount of the impact fees constituted an unconstitutional taking of its property." *KMST*, 137 Idaho at 583, 67 P.3d at 62.  Plaintiffs here are in the same position.

### B.     Plaintiffs' actions were voluntary.

Plaintiffs contest whether their signing of the Agreement was voluntary.  They contend that there were no true negotiations, that the County had a policy of requiring all developers to

---

[11] In *Williamson County*, the Court faulted the developer for failing to initiate an application for variance.

[12] First, they could have declined to sign the Agreement and submitted an application for final plat approval without an Agreement.  Subdivision Regulations § 250.  In that proceeding Plaintiffs could have presented their position that payment of their share of road costs is an unlawful requirement.  Second, Plaintiffs could have filed an application for new CUP with different conditions to replace the existing CUP.  LUDO, Chapter 3.  Third, they could have initiated an investigation under Chapter 12 of LUDO.  This chapter allows any person to initiate a proceeding to investigate noncompliance with a CUP.  Although these are typically employed by third parties and/or County staff, it could just as easily have been employed by Plaintiffs through notification to the County that they were unable to reach agreement on an Agreement, a violation of the CUP.  Plaintiffs then could have presented their defense that the requirement is unconstitutional.  Alternatively, they could have simply informed the County that they would not sign the Agreement, and waited for the County to initiate an investigation under Chapter 12.

pay fees according to the County's schedule, and that Plaintiffs believed their failure to do so would result in delay or denial of their application. The County contests those facts. But the fact that they are contested does not bar summary judgment, because those facts are immaterial. Even if those facts were true, it is undisputed that that Plaintiffs did not protest or object to the condition in the CUP that required a development agreement, that they signed the Agreement, and that they did not object to the payment of money under the Agreement at the time of final plat approval before the Board of County Commissioners.

Plaintiffs attempt to distinguish their actions from those of the developers in *KMST* by claiming that the development agreement was a standard condition of approval, that no County representative informed them that the Agreement was voluntary, and that they did not have any opportunity to negotiate the terms of the Agreement. But that is no different from *KMST;* that developer agreed to the road dedication because he was told by an ACHD official that it would be required. *KMST*, 138 Idaho at 579, 67 P.3d at 58. So even if the facts alleged by Plaintiffs were all true, it changes nothing. The terms of the Agreement are unambiguous. It is plainly entitled "AGREEMENT" and provides that the developer "agrees" to participate in the cost of improving the roads near the proposed development. Regardless of what discussions may or may not have taken place with County staff[13] and regardless of the Plaintiffs' understandings and assumptions, if it were not true that the developer was voluntarily agreeing to help pay for the improvement of the roads, then Ms. White simply should not have signed the Agreement without protest.

As in *KMST*, the developers here voluntarily included mitigation in their initial

---

[13] To the extent that Plaintiffs' claim that entering into the Agreement was not voluntary is based upon anything they were or were not told by County staff, it is without merit because Idaho law and the LUDO are clear that only the Board of Commissioners has authority to make a final decision on such matters.

application.  Under Section III, Impact Report, the developer states, "The project, as planned, will meet the goals of the *Comprehensive Plan*, planning policy and the requirements of the *Valley County Land Use and Development Ordinance* <u>with minimal impacts that will be adequately mitigated as required by the County</u>."  *Findlay Aff., Ex. A*  (Docket No. 69-1, p. 21) (emphasis supplied).  This, combined with the lack of any objection and the execution of the Agreement, establishes conclusively that the payment was voluntary.  No doubt the *KMST* developers did not really want to dedicate a road to the public.  Nor does the County doubt that Plaintiffs did not really want to pay money to help improve the roads to their development.  But in this context, "voluntary" does not connote desire—it simply means that the developer made a choice to agree instead of to object or protest.[14]  Having made this choice, the Plaintiffs' claims are barred by it.

### VI. PLAINTIFFS' REQUEST FOR RELIEF WITH RESPECT TO FUTURE ACTIONS IS NOT RIPE.

As noted in the Introduction, in the Opening Brief at 21, and in the Cruickshank Affidavit at ¶ 45, the County's future approach to fees for road impacts is evolving.  Given this, Plaintiffs are in no position to allege that "the defendant [is] seriously intent on enforcing[] the challenged measure."  Response Brief at 20.  This statement has no more credibility than the allegations underlying their now withdrawn *Application for Preliminary Injunction* (Documents 16, 17, 21, 25, 29, 30, 31, and 33).  Accordingly, claims based on future actions of the County (regarding Phase 2 or any so-called "policy" of the County) are not ripe and are improper subjects for a declaratory judgment.

---

[14]  This is apparently true of the other developers who signed affidavits that have been filed in this action.  As with Plaintiffs, they may not have wanted to enter into the agreements, but they did so by their own choice.  The fact that the developers (including Plaintiffs) may have thought that the County had the authority to require a payment of fees is also irrelevant.  The LUDO was available to all as were the Idaho statutes that relate to these issues.

## VII. EQUITABLE PRINCIPLES PREVENT PLAINTIFFS FROM OBTAINING THE REMEDIES THEY SEEK HERE.

Plaintiffs offer but one response to Valley County's equitable defenses: that the payment was not voluntary. But even if Plaintiffs believed that the County was inflexible and that agreement to the road fees would expedite approval, this does not change the fact that they signed a document, without protest, which on its face says "Agreement," accepted the benefits of the Agreement, and waited for years before bringing this litigation. This is not the sort of behavior that equity encourages.

## VIII. THIS LAWSUIT IS BARRED BY THE STATUTE OF LIMITATIONS.

Most of Plaintiffs' discussion of this issue is focused on what their claims are <u>not</u> and therefore which statutes do <u>not</u> apply. Plaintiffs' welcome concession that they are not pursuing other claims or theories (*e.g.*, tort) that might trigger those statutes greatly simplifies the discussion. What remains is straightforward and dispositive. Plaintiffs missed the two-year statute on their federal claims and the four-year statute on their state claims.[15]

Plaintiffs concede that § 1983 claims are subject to a two-year statute of limitations. Response Brief at 13. We have shown in Section III that all claims alleging violation of constitutional rights (all constitutional claims for whatever relief) must be brought under § 1983. Accordingly, they are subject to the two-year statute. End of story as to federal claims.

If the Court does not dismiss them, Plaintiffs' state law claims (takings and anything else) are subject to the state's catch-all four-year statute of limitations. The only question is when the clock starts. Plaintiffs contend the statute did not begin to run until they wrote a check on July

---

[15] Plaintiffs weakly assert that their claims arise out of a written contract, making Idaho's five year limitation period under Idaho Code § 5-216 available. However, Plaintiffs' claim is based upon the condition to contribute a portion of the funds necessary to improve the road in the area of their proposed development, which was part of the CUP approval. Nowhere in Plaintiffs' *Second Amended Complaint* (Document 41) do they allege that the County breached any provision of the Agreement.

21, 2006.  This ignores settled Idaho law that such claims run from "the time that the full extent of the plaintiff's loss of use and enjoyment of the property becomes apparent," that is, when the plaintiff "was fully aware of the extent to which [the government] interfered with his full use and enjoyment of the property."  *McCuskey v. Canyon County Comm'rs*, 128 Idaho 213, 217, 912 P.2d 100, 104 (1996).  That was no later than the date the CUP was issued.  As of that date, they knew for certain that they would be required to enter into an Agreement based on a Capital Improvements Plan requiring conveyance of property and/or fees.  Letter from County Engineer dated May 12, 2005 attached to Staff Report for CUP (Findley Affidavit, Exh. D, Document 69-4 and 64-22; Herrick Deposition (Document 64-3), 74:7-75:11).  They did not yet know the amount of the payment, but they knew that a contribution based on their fair share was expected.  The statute runs even though plaintiff does not know "the full extent of his damages." *McCuskey*, 128 Idaho at 217, 912 P.2d at 104.  In *Rueth v. State*, 103 Idaho 74, 79, 644 P.2d 1333, 1338 (1982), the Court said the statute ran on the date of a meeting between the parties at which time there was "recognition of the severity of the problem."  That would be the issuance of the CUP and the Engineer's letter, if not earlier.  In *Harris v. State, ex rel. Kempthorne*, 147 Idaho 401, 405, 210 P.3d 86, 90 (2009), the Idaho Supreme Court ruled that the statute of limitations on inverse condemnation ran from the day the plaintiffs were compelled to enter into a mineral lease with the state, not the time they made payments to the state under the lease.  The date of the check is not the issue.  The CUP is the trigger, and the lawsuit came too late.

Respectfully submitted this 1st day of November, 2010.

> GIVENS PURSLEY, LLP
>
> By:      /s/   Christopher H. Meyer
>      Christopher H. Meyer
> Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of November, 2010, a true and correct copy of the foregoing was served electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Jed Manwaring<br>Evans Keane LLP<br>1405 West Main<br>P.O. Box 959<br>Boise, ID  83701-0959<br>jmanwaring@evanskeane.com | ☐ U.S. Mail, postage prepaid<br>☐ Express Mail<br>☐ Email<br>☐ Hand Delivery<br>☐ Facsimile<br>☒ ECF Federal Court |
| Victor Villegas<br>Evans Keane LLP<br>1405 West Main<br>P.O. Box 959<br>Boise, ID  83701-0959<br>vvillegas@evanskeane.com | ☐ U.S. Mail, postage prepaid<br>☐ Express Mail<br>☐ Email<br>☐ Hand Delivery<br>☐ Facsimile<br>☒ ECF Federal Court |

                                              /s/   Christopher H. Meyer
                                              Christopher H. Meyer