UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KAREN WHITE, an individual, and ELKHORN, LLC, a Florida limited liability company,<br><br>    Plaintiffs,<br><br> v.<br><br>VALLEY COUNTY, a political subdivision of the State of Idaho,<br><br>    Defendant. | Case No. 1:09-cv-494-EJL-CWD<br><br>**MEMORANDUM ORDER** |

**INTRODUCTION**

Before the Court are Defendant Valley County's Motion for Summary Judgment (Dkt. 47), Motion for Rule 11 Sanctions (Dkt. 55) and Motion for Reconsideration (Dkt. 125). Chief United States Magistrate Judge Candy W. Dale issued two Report and Recommendations in this case (Dkt. 86 and 115). Objections and supplemental filings have been allowed by the Court to narrow the factual and legal issues presented. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding

further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

## BACKGROUND FACTS

**1. Plaintiffs Claims and Request for Relief**

Karen White ("White") and Elkhorn, LLC ("Elkhorn") brought this action on October, 1, 2009, against Valley County claiming that a fee imposed by the county as a condition for approval of their proposed development violated Idaho state law and deprived Plaintiffs of due process under both the federal and state constitutions.

Pursuant to the Second Amended Complaint, Dkt. 41, Plaintiffs seek the Court to enter a declaratory judgment that: 1) finds Valley County did not enact a valid impact fee ordinance required by the Idaho Development Impact Fees Act ("IDIFA"), Idaho code § 67-8201 *et seq.;* 2) finds the use of required development agreements is illegal; 3) enjoins Valley County from conditioning approvals of land use applications upon the developer entering a RDA or any similar agreement to collect monies for the proportionate share of road improvement costs attributable to traffic generated by their development; 4) declares White and/or Elkhorn do not have to pay monies for its proportionate share of road improvement costs attributable to traffic generated by Phase II of White Cloud Subdivision; 5) declares the RDA entered into by White and Valley County on Phase I rescinded and refund monies paid by White in an amount of $166,496; 6) declares Valley County's use of RDAs to collect monies from developers an

unauthorized tax and order Valley County to return the monies paid by White on Phase I in the amount of $166,496; and 7) awards costs and fees incurred in this action and any other relief the court deems just and proper.

## 2. Pending Motions.

Valley County has moved for summary judgment, arguing: (1) White lacks standing because she transferred her interest in the development to Elkhorn; (2) diversity jurisdiction is lacking; (3) Plaintiffs have failed to state a claim because the alleged constitutional violations were not brought under 42 U.S.C. § 1983; (4) even if the Court were to construe Plaintiffs' suit as a § 1983 action, Plaintiffs' claims would nonetheless be barred by the two-year statute of limitations applicable to § 1983 actions; (5) Plaintiffs' state law claims are barred by the statute of limitations; and (6) even if the state law claims are not barred by the statute of limitations, they nonetheless fail because White voluntarily paid the impact fee and did not challenge the fee through administrative or state court proceedings. Valley County also seeks Rule 11 sanctions based on the contention that Plaintiffs continue to pursue claims that are either incognizable under the law or that have otherwise been shown to be procedurally barred–either through the statue of limitations or exhaustion rules applicable to inverse condemnations actions.

The Court granted Plaintiffs' second motion for a preliminary injunction regarding Phase II requesting an extension of time to seek final plat approval. Defendant has filed a motion for reconsideration of the Court's order on that motion.

### 3.  Report and Recommendations

In the Report and Recommendation dated February 14, 2011, Dkt. 86, Judge Dale recommended the motion for summary judgment be granted in part and denied in part and the motion for Rule 11 sanctions be denied.  Specifically, Judge Dale recommended the Plaintiffs' federal claims be dismissed and their state claims be allowed to proceed due to factual disputes.  Since the Report and Recommendation was issued additional facts and supporting documents have been submitted by the parties that were not properly before Judge Dale, but that can be considered by this Court in ruling on the motion for summary judgment. Both parties have filed numerous objections to the Report and Recommendation.

### 4.  Timeline of Events

In 2005, Plaintiff Karen White ("White") and her father, E.T. Usher ("Usher") (who is not a party to this action), were the developers of White Cloud Subdivision ("White Cloud") in Valley County.  The subdivision included a preliminary plat for 80 lots on 210 acres and was approved on May 12, 2005.  Dkt. 91-6.  Phase I of the development included only 44 lots.  All land within Valley County's jurisdiction is zoned multiple use, pursuant to the Valley County's Land Use Development Ordinance.  Within the district, various uses are listed as "allowed" while others are listed as "conditional" necessitating a conditional use permit ("CUP").

When Valley County began to experience an increase in development, it initiated what it called a Capital Improvements Program ("CIP").  The CIP is described in the

Valley County Master Transportation Plan as follows:

**Capital Improvement Program Process and Purpose**

Valley County has developed and adopted a Capital Improvement Program (CIP).  The following description of the CIP is provided by Valley County:

"In 2005, the Valley County Commissioners initiated a Road Development Agreement (RDA) process **to require new developments to pay a fee to mitigate the impacts** of their developments on the roads and bridges in Valley County. The RDA process replaced the Capital Contribution Agreements that were used by Valley County for larger developments that needed infrastructure improvements. **The RDA requires all developers to pay a fee** based on the number of trips their developments generate.  **Developers are, in effect, required to pay for the roadway capacity their developments use.  The fee must be paid at the time of final plat.**  Credit is given for ROW required from the development and any in-lieu-of contributions, such as construction materials or developer sponsored construction of portions of roads and bridges.["]

Pl.s' Statement of Material Facts in Dispute, at 2 (Dkt. 62) (quoting Valley County Master Transportation Plan (Dkt. 64, Att. 5)) (bolding and underlining in original).

It is undisputed that Valley County did not adopt an impact fee ordinance or administrative procedures involved with the impact fee process as required by the IDIFA, Idaho Code §§ 67-8201 *et seq*.  The IDIFA prohibits certain impact fees unless imposed pursuant to an ordinance in compliance with the statute.  Valley County concedes it did not enact an IDIFA-compliant ordinance, because, at the time, it believed in good faith that none was required.  Recent lawsuits involving other municipalities have successfully challenged impact and housing fees as being illegal taxes since the contested ordinances

were not in compliance with state statutes and the municipalities were therefore

exceeding their authority in requiring certain fees from developers. *See Mountain*

*Central Board of Realtors, Inc. v. City of McCall*, Civil Case No. CV 2006-490-C,

Memorandum Decision and Order Granting Plaintiff's Motion for Summary Judgment

dated February 9, 2008; *Cove Springs Development, Inc. v. Blaine County*, Civil Case No.

CV2008-02, Order on Summary Judgment on Counts 2 and 3 dated June 3, 2008. The

Court notes Defendants have not moved for summary judgment on the issue of whether

the impact fees under the RDAs are a legal tax, but seek to have the case dismissed on

other legal arguments.

In response to the pending litigation, Valley County passed a resolution in March

of 2011, providing in part:

> In order to avoid litigation costs and uncertainty, the Board of County
> Commissioners will no longer into Road Development Agreements calling
> for the payment of fees or other contributions for off-site road
> improvements until such time as the County adopts an IDIFA-compliant
> ordinance, unless the permit holder voluntarily and expressly waives any
> objection thereto.
> . . .
> If no IDIFA-compliant impact fee ordinance has been enacted at the time of
> the negotiation, the County will seek other ways to meet its obligation to
> ensure that adequate public services are available to serve the new
> development. This could include conditions respecting the sequence and
> timing of development so as to ensure that development occur on a schedule
> consistent with the availability of public services. Absent an IDIFA-
> compliant ordinance, the new Road Development Ordinance, as in the past
> will contain no requirements for payments or contributions by the permit
> holder unless such requirements are expressly and voluntarily agreed to by
> the permit holder.

Valley Count represents it is in the process of drafting an IDIFA-compliant impact fee

ordinance.

The CUP for Phase I of White Cloud was approved by Valley County on May 24, 2005. Dkt. 48-1. The CUP included as a condition that a Development Agreement shall be required with the Board of County Commissioners. *Id.* To satisfy the Development Agreement requirement in CUP for Phase I in 2005, White entered into a Road Development Agreement ("RDA") with Valley County.

It appears negotiations on the RDA began sometime in the late spring or summer of 2005 as the county has provided evidence that a draft RDA was sent to the engineering firm working on the White Cloud development, Secesh Engineering, in August 2005. The final RDA was provided to Scott Findlay, Project Manager for White Cloud on or about June 24, 2006. White signed the RDA on June 26, 2006. White paid the required fees under the RDA of $166,496 on July 21, 2006. Valley County executed the RDA on July 24, 2006 and the RDA was recorded on July 26, 2006.

The final RDA differed from the draft RDA in that it only covered the 44 lots being developed in Phase I and eliminated an offset for a dedicated roadway right of way. See Dkt. Nos. 48-2 and 104-1. The RDA states: "The developer agrees to pay Valley County their proportionate share of roadway costs for a total cash payment of $166,496 due at the time of Final Plat approval." Pl.s' Compl., Attachment 2, Dkt. 1. The RDA further states "[the intent of the recordation [of the RDA] will be to document the official aspect of the contractual obligation set forth in this Agreement." *Id.*

Phase I of White Cloud subdivision was completed.

**MEMORANDUM ORDER- 7**

On May 12, 2006, Usher granted a Warranty Deed to Elkhorn, LLC ("Elkhorn"), a Florida limited liability company, for his interest in the White Cloud subdivision real property. White assigned her interests in Phase II to Elkhorn. White filed an affidavit indicating she did *not* assign her interests in Phase I to Elkhorn. Dkt. 65. White and her husband are members of the Elkhorn limited liability company and reside in Florida. White is also the manager of Elkhorn. Accordingly, the sole developer for Phase II is Elkhorn.

Elkhorn has initiated the land use permitting process for Phase II of the White Cloud development, and represents that all of the conditions contained in the CUP for the remaining 36 lots have been satisfied with the exception that Elkhorn has not entered into a RDA with Valley County. A Development Agreement was again required as a condition of the CUP.

The CUP required a final plat for Phase II needed to be recorded by July 9, 2009. After this litigation was filed, the Valley County agreed to an extension to record the final plat until August 1, 2011 by Valley County. Recently, this Court granted a Preliminary Injunction related to the expiration of the deadline to record a final plat for Phase II based on the ongoing litigation.

Valley County maintains White voluntarily agreed to pay the RDA monies. White denies that the payment was voluntary since it was required in order to get the final plat approval. It is undisputed White and Usher did not file an appeal of the CUP or final plat approval for Phase I after she paid the RDA fee of $166,496. Nor did White or Usher file

an inverse condemnation claim in state court regarding the monies paid under the RDA in Phase I. As to Phase II, Elkhorn has not filed an appeal of the CUP and has not recorded a final plat. Nor has Elkhorn entered an RDA for Phase II.

It is undisputed that White was involved in the development of another subdivision in Valley County called "Elkhorn Subdivision" in 2003 that also required a RDA and the payment of monies for impact fees under a CIP. The payment of monies under the Elkhorn Subdivision RDA are not at issue in this case as any claim regarding that subdivision would be outside the applicable statute of limitations.

It appears undisputed by the parties that the RDA monies paid by White for Phase I were used by Valley County to complete capital investments for roads in the vicinity of the White Cloud development. *See* Exhibit A to RDA, Dkt. 48-2. It is unclear if any of the monies were used for roads not in the vicinity of the White Cloud development.

# DISCUSSION

## 1. Standard of Review for Objections to Report and Recommendations

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Moreover, this Court "shall make a de novo determination of those portions of the report which objection is made." *Id.* In *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003), the court interpreted the requirements of 28 U.S.C. 636(b)(1)(C):

> The statute [28 U.S.C. § 636(b)(1)(C)] makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise. As the *Peretz* Court instructed, "to the extent de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties." *Peretz*, 501 U.S. at 939, (internal citation omitted). Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct. *See Ciapponi,* 77 F.3d at 1251 ("Absent an objection or request for review by the defendant, the district court was not required to engage in any more formal review of the plea proceeding."); *see also Peretz*, 501 U.S. at 937-39, (clarifying that de novo review not required for Article III purposes unless requested by the parties) . . . .

*See also Wang v. Masaitis*, 416 F.3d 993, 1000 & n.13 (9th Cir. 2005). In this case, both parties have raised numerous objections to the Report and Recommendations and the record has been supplemented such that the posture of certain issues is different than when such issues were argued before Judge Dale. Therefore, the Court conducted a *de novo* review of the entire record. Portions of the Court's opinion have been copied from Judge Dale's analysis as a matter of judicial economy on those issues wherein the Court agrees with Judge Dales legal conclusions.

**2.  Valley County's Motion for Summary Judgment**

**A. Standard of Review**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)).

The determination of whether summary judgment is appropriate in a given case is within the sound discretion of the trial court, "and in cases posing complex issues of fact and unsettled questions of law, sound judicial administration dictates that the court withhold judgment until the whole factual structure stands upon a solid foundation of a plenary trial where the proof can be fully developed, questions answered, issues clearly focused and facts definitively found." *Petition of Bloomfield Steamship Co.*, 298 F. Supp.

1239, 1242 (S.D.N.Y. 1969). The absence of disputed material facts does not automatically entitle the moving party to summary judgment; Rule 56(c) requires that the moving party establish, in addition to the absence of a dispute over any material fact, that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also, *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). This requires the movant to set forth the legal theory upon which its motion is based and to satisfy the court that undisputed facts clearly lead to the conclusion that it is entitled to judgment on that legal theory.

## B. Standing

Valley County argues that Karen White lacks standing in this case because she conveyed her interest in the White Cloud development to Elkhorn. Def.'s Brief in Sup. Of Sum. Jud., at 4, Dkt. 48. In support of its argument, Valley County cites *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001). In that case, the United Sates Supreme Court held that a successive title holder of property is not barred from claiming a land use restriction constitutes a regulatory taking notwithstanding the fact that the restriction was enacted before the claimant came into possession of the property. *Id.*, at 626. From this holding, Valley County extrapolates that when a property owner conveys her interest in a property that is subject to a regulation requiring just compensation, the right to seek relief for the taking passes to the new owner.

The record on this matter has now been clarified by supplementation. White assigned only her interest in Phase II to Elkhorn. Usher assigned all of his interest in Phase I and Phase II to Elkhorn. Therefore, the Court finds White has standing to bring a

claim regarding Phase I since she still has an interest as the developer of Phase I and since she actually paid the monies required under the RDA.

## C. Diversity

In Valley County's objections, the county appears to have conceded the diversity argument that Elkhorn's principal place of business as a limited liability company is in Florida and that the test for diversity purposes for a limited liability company is different than for corporation. Furthermore, it is undisputed that Karen and Luther White, who are the only members of the limited liability, are residents of Florida. The Court finds the Plaintiffs have satisfied the diversity requirement of 28 U.S.C. 1332 and the Court adopts Judge Dales' well-reasoned analysis on this issue by reference.

## D. Plaintiffs' Failure to Plead Constitutional Violations Under 42 U.S.C. § 1983

Valley County argues that Plaintiffs were required under Ninth Circuit law to plead their federal constitutional claims under 42 U.S.C. § 1983 and that Plaintiffs cannot escape the procedural and jurisdictional limitations (including the statute of limitations) applicable to § 1983 by bringing the claims under the Declaratory Judgment Act. Under Valley County's argument, all of White's federal constitutional claims are barred by the statute of limitations. Judge Dale agreed and Plaintiffs raised an objection to the Report and Recommendation urging this Court to rule the Ninth Circuit law is incorrect and the binding precedent is the Supreme Court decision in *First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304 (1987) (hereinafter *First*

*English*).  The Court respectfully declines.

The Ninth Circuit has held expressly that a violation of the Takings Clause can be redressed only through a claim under § 1983. *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003) ("Taking claims *must be brought* under § 1983.") (emphasis added); *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992).  In *Azul-Pacifico*, the Ninth Circuit held that a plaintiff alleging a violation of the Takings Clause "has no cause of action directly under the United States Constitution. *Id.*  The court further stated that "[w]e have previously held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." *Id.*

Plaintiffs argue that they should be allowed to bring a direct action under the Takings Clause without pleading it under § 1983.  In doing so, Plaintiffs rely on the United States Supreme Court's holding in *First English*.  In *First English* the Supreme Court stated that "it has been established at least since *Jacobs v. United States*, 290 U.S. 13 (1933), that claims for just compensation are grounded in the Constitution itself." *Id.*, at 315.  The Court also stated: "The cases cited in the text, we think, refute the argument of the United States that 'the Constitution does not, of its own force, furnish a basis for a court to award money damages against the government.'" *Id.*, at 316 n. 9 (citation omitted).

Plaintiffs argue that the Supreme Court's language in *First English* is in conflict with the Ninth Circuit's holding in *Azul-Pacifico*.  Plaintiffs are not alone in their view. The Fourth Circuit also has recognized the tension between *First English* and the rule that

**MEMORANDUM ORDER- 14**

federal constitutional claims must be asserted under § 1983. *J.C. Lawyer v. Hilton Head Public Service Dist. No. 1*, 220 F.3d 298, 303 n. 4 (4th Cir. 2000) (stating that courts have held, "in apparent conflict with *First English*, that a violation of the Takings Clause can only be redressed through a claim under § 1983"). Regardless of whether Plaintiffs' interpretation of *First English* is correct, this Court is bound by the Ninth Circuit precedent that takings claims must be brought under § 1983 as the Ninth Circuit opinion in *Azul-Pacifico* was issued after *First English,* so it can be assumed the Ninth Circuit considered Plaintiff's argument and rejected the same when it issued its opinion.

The Court realizes this ruling results in the dismissal of the federal takings claim as the statute of limitations for 42 U.S.C. § 1983 claims has run. In *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985), the United States Supreme Court held that § 1983 claims are best characterized as tort actions for personal injuries and federal courts must borrow the statute of limitations governing personal injury actions in the state in which the action is brought. This bright-line rule was reaffirmed in *Owens v. Okure*, 488 U.S. 235 (1989). And the rule applies even where the state courts have ruled that some other statute of limitations applies to the specific alleged violation–in this case, a takings claim. See *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (applying Ohio two-year statute of limitations for personal injuries to takings claim where plaintiffs argued that the two-year statute of limitations was contrary to Ohio law); see also, *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651 (9th Cir. 2003) (applying California statute of limitations for personal injury torts to plaintiff's takings claim under § 1983).

**MEMORANDUM ORDER- 15**

The statute of limitations in Idaho for personal injury actions is two years. Idaho Code § 5-219.  Although the parties dispute when the alleged taking occurred in this case, White argues that the taking accrued on July 21, 2006, the date White paid the road development fee to Valley County.  This action was filed on October 1, 2009, well outside the two-year statute of limitations.  Therefore, the Court finds even in applying the date the impact fees were paid on July 21, 2006 as the accrual date, White's federal constitutional claims barred by the statute of limitations and the claims must be dismissed.     **E. Elkhorn's Federal Due Process Claim**

Plaintiffs' federal takings claim is limited to Karen White for Phase I.  Plaintiffs, however, also allege in their Second Amended Complaint (Dkt. 41) that Valley County's Capital Improvements Program ("CIP"), which requires developers to enter into a RDA as a condition for approval of a proposed development, violated Elkhorn's right to due process under the Fourteenth Amendment.  For the reasons discussed below, the Court agrees with Judge Dale that Elkhorn's federal due process claim is barred by the United States Supreme Court's holding in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) (hereinafter *Williamson County*).

In *Williamson County*, a developer sought zoning approval for a residential subdivision. *Id.*, at 177.  The developer obtained preliminary plat approval, but before the final plat was submitted the county amended its zoning ordinance resulting in a substantial reduction in the number of lots allowed. *Id.*, at 177-79.  The county then disapproved the plaintiff's final plat based on noncompliance with the revised ordinance.

*Id.*, at 179-80. The developer brought an action in federal court under 42 U.S.C. § 1983 alleging that the county's actions amounted to a taking without just compensation and that the county's actions violated the developer's right to due process under the Fourteenth Amendment.

In issuing its decision, the Supreme Court established two tests for plaintiffs alleging that the application of a land use regulation effected a taking of their property and/or violated their right to due process under the federal constitution. First, the claim must be ripe in the sense that the would-be plaintiff has availed herself of all opportunities to obtain relief at the administrative level. *Id.*, at 186-87. Second, before seeking federal court jurisdiction, the plaintiff must utilize state judicial procedures for inverse condemnation and be denied compensation. *Id.*, at 194. Under the first test, the Supreme Court held that "a claim that the application of governmental regulations effects a taking of property is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding application of the regulations to the property at issue." *Id.*, at 186. Under this test, the plaintiff must demonstrate that she "availed [herself] of the opportunities . . . to obtain administrative relief by requesting either a variance . . . or a waiver from [the complained of regulation or policy]." *Id.*, at 187 (quoting *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, 452 U.S. 264 (1981)).

Although Elkhorn has not alleged a "taking" of its property since no impact fees have been assessed for Phase II, the Supreme Court indicated in *Williamson County* that

the ripeness requirements set forth in that opinion also apply to alleged violations of the Due Process Clause. *Williamson County*, 473 U.S. at 185 ("whether we examine the Planning Commission's application of its regulations under Fifth Amendment 'taking' jurisprudence, or under the precept of due process, we conclude that respondent's claim is premature."). The Ninth Circuit also has had occasion to address alleged violations of procedural due process in the context of land use regulations. See *Herrington v. County of Sonoma*, 857 F.2d 567, 569 (9th Cir. 1988) (holding that the *Williamson County* ripeness tests apply to equal protection and substantive due process claims, and stating that "we see no reason, under the circumstances of this case, to apply a different standard to [Plaintiff's] procedural due process claim."). And in *Harris v. County of Riverside*, 904 F.2d 497, 500 (9th Cir. 1990), the court of appeals stated that "[p]rocedural due process claims arising from an alleged taking may be subject to the same ripeness requirements as the taking claim itself depending on the circumstances of the case."

In determining whether a procedural due process claim is subject to the ripeness requirements set forth in *Williamson County*, the Ninth Circuit looks to the relationship between the takings claim and the due process claim; if the alleged due process violation arises from the same facts giving rise to the takings claim, then both claims will be subject to the ripeness inquiry. *Harris*, 904 F.2d at 501. Conversely, if the procedural due process claim arises from facts independent of the alleged taking, the due process claim is not subject to the ripeness inquiry. For instance, where a county planning agency failed to provide a hearing before halting a previously approved land development project, and

the developer alleged a taking based upon deprivation of all economic use of the property and an independent violation of procedural due process based upon the lack of a hearing, the Ninth Circuit held that the procedural due process claim was sufficiently unrelated to the takings claim and therefore not subject to the ripeness analysis. *Weinberg v. Whatcom County*, 241 F.3d 746 (9th Cir. 2001).

Upon review of Plaintiffs' Second Amended Complaint in this case, Elkhorn's due process claim is indistinguishable from White's takings claim; both allege constitutional violations based on the requirement that they enter into road development agreements (and pay the associated fee) as a condition for final plat approval. Indeed, the only difference between the Plaintiffs' claims is that Elkhorn has not paid the fee required under the RDA. Under these circumstances the Court finds Elkhorn's due process claim sufficiently related to the associated takings claim to subject both claims to the ripeness test set forth in *Williamson County*.

The Court finds that, under *Williamson County*, Elkhorn's due process claim is not ripe since Elkhorn has not paid any impact fee for Phase II (the parties are allegedly still negotiating a development agreement); Valley County has passed a resolution in May of 2011 indicating it does not intend to charge road impact fees until an IDIFA complaint ordinance is passed; Elkhorn has not sought a variance or waiver of the development agreement requirement; and, Elkhorn has not challenged the requirement that developers pay a fee to mitigate the impacts of a proposed development in Idaho state court. Perhaps most importantly for the due process analysis under the Fourteenth Amendment, Elkhorn

has not been denied final plat approval.  The question whether Valley County *violated*

*state law* by requiring developers to enter into road development agreements as a

condition for approval of a proposed project is a separate question from whether the

County deprived Elkhorn of its right to due process.  Whether Elkhorn has stated a claim

under state law will be addressed below.  The Court finds Elkhorn's federal due process

claim should be dismissed without prejudice since it is not ripe for federal adjudication.

### F.  Plaintiffs' State Law Claims

Although the Court has found White's federal constitutional claims barred by the

statue of limitations applicable to 42 U.S.C. § 1983 and Elkhorn's federal constitutional

claims barred by the Supreme Court's holding in *Williamson County*, the Court

nonetheless has jurisdiction to entertain Plaintiffs' state law claims because diversity

exists between the parties.  Plaintiffs allege that Valley County has not enacted a valid

impact fee ordinance in accordance with the IDIFA and that Valley County's imposition

of impact fees in the absence of a valid ordinance violates state law.  Similarly, Plaintiffs

allege that Valley County's requirement that developers enter into RDAs as a condition of

receiving final plat approval for proposed developments constitutes an unauthorized tax

in violation of the Idaho Constitution.  Given Plaintiffs' argument that the imposition of

fees to mitigate the impact of new developments on the County's roads constitutes an

illegal tax under Idaho state law, Plaintiff White claims that the RDA between her and the

County is invalid and she seeks an order from the Court declaring the agreement

rescinded. *See* Second Amended Complaint (Dkt. 41.)  Plaintiffs also generally allege

violations of the Takings and Due Process clauses of the Idaho Constitution.

In the motion for summary judgment, Valley County does not move for summary judgment on whether the impact fee charged on Phase I was a legal fee. Instead, Valley County argues that Plaintiffs' state law claims (including the alleged violations of the Idaho Constitution) are barred by the four-year statute of limitations applicable to inverse condemnation claims in Idaho, Idaho Code § 5-224, and the Idaho Supreme Court's holding in *KMST, LLC, v. County of Ada*, 67 P.3d 56 (Idaho 2003).[1] Alternatively Defendant argues the claim of an illegal tax should be dismissed as the impact fees were voluntarily paid by White for Phase I.

## I. Idaho Statute of Limitations Applicable to Inverse Condemnation

The limitations period for inverse condemnation claims in Idaho is contained in § 5-224 of the Idaho Code, which is the statute of limitations for all actions not specifically provided for in another statute. Idaho Code § 5-224 requires that claims within its purview "must be commenced within four (4) years after the cause of action shall have accrued."

The issue here is when the cause of action accrued. Valley County originally

---

[1] Valley County also argues that Plaintiffs' claims are barred by, and the County is entitled to summary judgment based upon, various equitable principles, including: unjust enrichment; *quantum meruit*; promissory estoppel; and laches. In response, Plaintiffs argue that Valley County should not be allowed to "hide behind equitable theories to justify its illegal conduct." (Dkt. 63.) On this point, the Court agrees with Plaintiffs; *if* the County's conduct was illegal under Idaho law, the equitable principles cited would not bar Plaintiffs' claims. In any event, the Court finds that these issues require more factual development and that Valley County has not met its burden under Federal Rule of Civil Procedure 56 warranting summary judgment based upon the equitable principles referenced in passing in the County's motion.

argued in this litigation that the inverse condemnation claim accrued when the Planning and Zoning Commission issued the Conditional Use Permit on May 24, 2005, which notified the developers of White Cloud that they would be required to enter into a development agreement with the County Board of Commissioners.  In the objections, Valley County now argues the latest possible accrual date is the date the draft RDA was provided to Plaintiff White's engineer in 2005.  White argues, on the other hand, that the inverse condemnation claim did not accrue until she payed the impact fee.  For the reasons discussed below, both parties are incorrect.

The Idaho Supreme Court has held that inverse condemnation claims accrue at the time the taking occurs. *McCuskey v. Canyon County Commissioners*, 912 P.2d 100, 104 (Idaho 1996).  "The time of taking occurs, and hence the cause of action accrues, as of the time that the full extent of the plaintiff's loss of use and enjoyment of the property becomes apparent," that is, when the plaintiff "was fully aware of the extent to which [the government] interfered with his full use and enjoyment of the property." *Id*.  The statute runs even though plaintiff does not know "the full extent of his damages." *Id*.  In *Rueth v. State*, 644 P.2d 1333, 1338 (Idaho 1982), the Idaho Supreme Court held that the statute ran on the date of a meeting between the parties at which time there was "recognition of the severity of the problem."

Judge Dale determined that under the Idaho Supreme Court's interpretation of the applicable statute of limitations, the taking accrued when Valley County provided a copy of the RDA to White describing the impact fees requirement.  This finding led to

additional supplementation of the record. Valley County now argues that the statute of limitations should begin to run when the "draft" RDA was provided to the project's engineer allegedly in August of 2005. *See* Declaration of Cody Janson, Dkt. 104-1 (based on his time sheet entries he believes a draft RDA was sent to Secesh Engineering in August 2005, but he has no independent recollection of sending the draft RDA for this particular project). Plaintiff White and the project manager for Phase I dispute the scope of the engineer's authority to act as an agent for the project and the receipt of a draft RDA by the engineer. *See* Affidavit of Scott Findlay In Opposition to Motion for Summary Judgment, Dkt. 69; Affidavit of Scott Acker, Dkt. 123-1(engineer has no recollection of receiving a copy of a draft RDA from Mr. Janson on August 24, 2005 or any other day); White argues that sending the draft RDA to the project engineer did not make her "fully aware" of the inverse condemnation as the engineer was not her agent on the project. Plaintiffs also renew their argument in the objections that the Court should apply the date the monies were paid as the accrual date.

The law regarding determining the accrual date for an inverse condemnation claim is not disputed and the inverse condemnation statute of limitations runs even though plaintiff may not know the full extent of his damages. *Rueth v. State*, 644 P.2d 1333 (Idaho 1982). However, what it is disputed in this case is how to apply the law to determine "when" Plaintiffs were fully aware of the road impact fees that had to be paid before a final plat would be issued. This is a close call, but the accrual date is a legal question as "the determination of whether or not there was a taking is a matter of law to

be resolved by the trial court." *Tibbs v. City of Sandpoint*, 603 P.2d 1001, 1004 (Idaho 1979). Therefore, the Court finds the accrual date question can be ruled upon even though the parties dispute some of the facts regarding if and when a draft RDA was provided and to whom. The Court finds the disputed facts are not determinative of the legal question of what event would serve as the accrual date for an inverse condemnation action in this particular case.

The Court finds that White was not "fully aware" of the alleged taking until her project manager on Phase 1, Mr. Findlay, received the final RDA with the requirement that $166,496 was due for proportional road impact fees related to Phase I. The delivery of the draft RDA did not start the statute of limitations clock as until there was a final agreement as to the amount of fees for Phase 1, White could not be "fully aware" of the required fees.

The Court reaches this conclusion even though White had been involved with another development in 2003 that had an RDA. It would be unfair to infer White was "fully aware" of the scope of Valley County's demands for impact fees related to the property included in Phase I because she had paid fees on a prior development. This case is distinguishable from some of the other inverse condemnation cases as at the time the road impact fees were paid, the developer did not know the fees were arguably illegal due to the fact the county's ordinance did not comply with IDIFA. In *Rueth*, the plaintiffs' land was flooding when they met with governmental authorities so the severity of the problem was known as there was substantial evidence to support the water had already

flooded the plaintiffs land.

In this case, the road impact fees were not known for Phase I until the final RDA was provided and required to be signed. Under the facts of this case, the Court finds White was "fully aware" and the full extent of her loss of use and enjoyment of the lots involved in Phase I became "apparent" when the county provided the project manager with the final RDA Valley County was requiring as satisfaction of the CUP's mandatory condition that a development agreement be entered.

Specifically, the draft RDA being provided to the project engineer (if that occurred) could not make White "fully aware" as the draft RDA contained different dollar amounts and terms, the final RDA was limited to the 44 lots being developed as Phase I, and negotiations were not complete. The Court acknowledges Valley County's argument that White was fully aware in 2005 as the draft RDA included the same calculated cost per lot which flowed from the county's CIP. However, this argument is not persuasive as until Valley County indicated to White the RDA which had to be signed for approval of the Phase I property, the terms of the RDA were not finalized. It would be against basic contract principles to say just because one side has provided a draft agreement, there are no further negotiations and the parties are fully aware of all terms.

Defendants urge the Court to consider other state court decisions where the courts have determined the claim for inverse condemnation runs from an earlier date. The Court has reviewed the cases cited by Defendants and finds they are not dispositive of the case at bar. For example, in *Buckskin Properties, Inc. v. Valley County*, Case No. CV-2009-

**MEMORANDUM ORDER- 25**

554-C, Memorandum Decision dated January 7, 2011, Dkt. 102, Valley County argued the statue of limitations should run from the date the plaintiff received the conditional use permit and signed the final Capital Contribution Agreement setting out the contribution requirements in full and plaintiffs argued it was the date the impact fees were paid. The state court ruled at the very latest, it was the date when the dedication of right of way was accepted and that at the point in time the interference with plaintiffs' property interest became apparent. This date was after the impact fee agreement was final, but before the payment of impact fees was made.

While the parties acknowledge the *Buckskin* case is now on appeal, this Court's reasoning is similar to Judge McLaughlin's – the accrual date is not the date the impact fees were paid, but when the terms were final and the developer was fully aware of the impact fees owed. Even if this Court was to adopt as the accrual date the date Valley County signed or recorded the final RDA (instead of the date White signed the RDA), the inverse condemnation claim would still be within the four year statute of limitations for an inverse condemnation action.

To the extent Valley County still maintains the accrual date is the date the conditional use permit is approved, the Court rejects this argument in this case as it is undisputed that the required development agreement was not even negotiated or in draft form when the conditional use permit was approved. Instead, the Court finds it persuasive the conclusion in *Buckskin* that the accrual date was not before the Capital Contribution Agreement setting the actual impact fees to be paid was final. This is

consistent with this Court's determination of when a developer becomes "fully aware" of the alleged takings associated with the road impact fees.

In applying this accrual date to the undisputed facts, the Court notes it is unclear from the record when the final agreement provided to the Project Manager, but it was on or about June 26, 2006 as White signed the agreement on June 26, 2006. The Complaint was filed on October 1, 2009. Dkt. 1. Thus, viewing the evidence in a light most favorable to the Plaintiffs for purposes of summary judgment, Valley County has not satisfied the Court that White's claim is barred by the four year statute of limitations for inverse condemnation proceedings under § 5-224 of the Idaho Code.

The Court also finds it need not decide the issue raised in Valley County's motion for reconsideration related to whether the accrual date for Phase II is the same as Phase I as the inverse condemnation action Phase 1 is deemed to have been timely filed.

Plaintiffs responded to the motion for reconsideration arguing that they have two theories of recovery of the impact fees paid for Phase 1: inverse condemnation and imposition of an illegal tax. The Court finds the briefing submitted by the parties on the pending motion for summary judgment does not address the statute of limitations and accrual date for a claim of imposition of an illegal tax. Therefore, the Court declines to discuss this issue at this time, but leaves open the possibility of motion for summary judgment by one of the parties on the issue of what the applicable statute of limitations for the illegal tax claim would be under Idaho law.

Moreover, to the extent the Plaintiffs have alleged a due process claim pursuant to

the Idaho Constitution, the Court does not have before it adequate briefing to determine if such a claims would be subject to the four year "catchall" statute of limitations pursuant to Idaho Code § 5-224 or a different statute of limitations. The Court will defer its consideration of the applicable statute of limitations for a due process claim to a later date.

### ii. Whether Plaintiffs' Claims is Barred Monies Were Paid Voluntarily

Valley County also argues that Plaintiffs' claims are barred by the Idaho Supreme Court's holding in *KMST, LLC v. County of Ada*, 67 P.3d 56 (Idaho 2003). In that case, the developer, KMST, desired to develop a piece of property into a commercial retail center. *Id*. at 57. The development required a zoning change from rural transitional to high-density commercial, and KMST submitted an application to the Ada County planning and Zoning Commission to begin the process of obtaining a zoning change. *Id*. As part of the development approval process, KMST also submitted a land use application to the Ada County Highway District ("ACHD"). *Id*. In its application to ACHD, KMST stated that it would construct a public street along the east side of the property. *Id*., at 58. After hearings before the Planning and Zoning Commission and the county board of commissioners, the county approved the proposed development. *Id*. Following the construction of the development, including construction of the public street and the payment of an impact fee to ACHD, KMST filed an inverse condemnation action against the county and ACHD alleging that the impact fee and the requirement that KMST construct the public street constituted a taking in violation of the federal and state

constitutions. *Id.*, at 59.

The Idaho Supreme Court upheld the trial court's dismissal of both claims on procedural grounds. First the court held that under *Williamson County* the claim that the dedication of the public street constituted a taking was not ripe.[2] The court next held that the claim concerning the impact fee was barred because the plaintiff had failed to exhaust its administrative remedies. The court stated that "[a]s a general rule, a party must exhaust administrative remedies before resorting to court to challenge the validity of administrative acts." *Id.*, at 62. As to the dedication of the public street, the court stated: "KMST's property was not taken. It voluntarily decided to dedicate the road to the public in order to speed the approval of its development. Having done so, it cannot now claim that its property was 'taken.'" *Id.*, at 61. As to the impact fee, the court stated: KMST "did not appeal the calculation of the fees; and it did not pay the fees assessed under protest. It simply paid the impact fees in the amount initially calculated. Having done so, it cannot now claim that the amount of the impact fees constituted an unconstitutional taking of its property." *Id.*, at 62. The court did, however, provide the following caveat:

> We are not holding that there was no taking simply because KMST built the public street before challenging that requirement in court. We are holding that there was no taking because KMST itself proposed that it would construct and dedicate the street as part of its development. *We express no opinion as to whether a developer who contends that a condition of approval amounts to an unconstitutional taking*

---

[2] The Idaho Supreme Court has adopted the United States Supreme Court's test set forth in *Williamson County* for determining whether an inverse condemnation claim is ripe under Idaho state law. See *City of Coeur d'Alene v. Simpson*, 136 P.3d 310, 316-17 (Idaho 2006).

> *of property must litigate that issue before proceeding with the*
> *development.*

*Id.*, at 61 n. 1 (emphasis added).

Valley County argues that, since Karen White voluntarily payed the impact fee in connection with Phase I of the White Cloud project, she is now barred under the Idaho Supreme Court's holding in *KMST* from bringing a claim for inverse condemnation. White contests the proposition that her payment of the fee was voluntary and argues that under the Idaho Supreme Court's decision in *Lochsa Falls, L.L.C. v. Idaho*, 207 P.3d 963 (Idaho 2009), her inverse condemnation claim is not barred.

In *Lochsa Falls*, a developer proposed a 740 residential development along the highway in Meridian, Idaho, and presented a preliminary plat of the subdivision to the city for approval. *Id.*, at 966. The Idaho Transportation Department ("ITD") required the developer to obtain an encroachment permit. *Id.* As part of the application process for the permit the developer was required to submit a transportation impact study. *Id.* The traffic study recommended that a traffic signal be installed to accommodate the increased traffic created by the development. *Id.* The impact study estimated construction costs for the signal at approximately $180,000. *Id.* ITD's encroachment permit included a condition that the developer construct the signal prior to any work being done on the highway right of way. *Id.*, at 966-67. The developer received final plat approval from the city, but was informed that building permits would not issue until the developer payed for the signal as required by ITD. *Id.*, at 967. The developer submitted a letter of credit to cover

construction costs.

After the development was underway and the traffic signal was installed, the developer initiated an action seeking reimbursement for the expenses incurred in constructing the traffic signal. *Id.* The developer claimed that the requirement that it pay for the construction of the traffic signal was an unconstitutional tax, that it constituted a taking, and that it violated the developer's right to due process. In other words, the developer in *Lochsa Falls* alleged the same violations presented in this case. The trial court dismissed the developer's claims without prejudice for failure to exhaust. *Id.*

The Idaho Supreme Court reversed the trial court's dismissal based on the determination that ITD had no process for the developer to challenge the approved permit that was subject to the condition that the traffic signal be constructed. *Id.*, 971. The court pointed out that, although "the administrative rules provide a process whereby a denial of a permit application can be appealed internally within ITD . . . those rules provide no mechanism whereby an applicant, whose permit application has been approved subject to the imposition of additional requirements, can challenge those conditions." *Id.* The court stated that the "failure to exhaust administrative remedies is not a bar to litigation when there are no remedies to exhaust." *Id.*, at 970-71 (citing *James v. Dep't of Transp.*, 876 P.2d 590 (Idaho 1994).

In this case, Plaintiffs have submitted the deposition testimony of Gordon Cruickshank. (Dkt. 64-1.) Mr. Cruickshank was the road department supervisor for Valley County between 1998 and 2007, and in 2007 he was appointed to the Valley

County Board of County Commissioners. *Id.*, at 9-10. In his deposition, Mr. Cruickshank

sets forth the process through which a developer seeks and receives final plat approval for

a proposed development. First, the developer must seek preliminary plat approval from

the Planning and Zoning Commission. *Id.*, at 17-18. Once the developer receives

preliminary approval, construction may begin. *Id.*, at 20. According to Valley County's

Master Transportation Plan, "[i]n 2005, the Valley County Commissioners initiated a

Road Development Agreement (RDA) process to require new developments to pay a fee

to mitigate the impacts of their developments on the roads and bridges in Valley County."

(Dkt. 64-5) (emphasis omitted). According to Mr. Cruickshank, pursuant to the above

policy, the County requested that the Planing and Zoning Commission begin issuing

conditional use permits containing the requirement that developers "enter into an

agreement with the county on the proportionate share of cost to improve the road in the

area of that development." *Id.*, at 45.

In light of the conditional use permit, the applicant then would meet with a

representative of the County, who would disclose to the developer the "proportionate

share that the county felt was appropriate for their development and explain[] the road

development agreement to them." *Id.*, at 53. After the conditions in the conditional use

permit are met, including the requirement that the developer enter into a road

development agreement with the county, the developer may seek final plat approval from

the Planing and Zoning Commission. The Planing and Zoning Commission then makes a

recommendation to the Board of County Commissioners whether to grant final approval

to the developer. *Id.*, at 23. The county commissioners then hold a public hearing and vote on whether to approve the development. *Id.*, at 26.

According to Mr. Cruickshank, if an applicant disagrees with a decision of the Planing and Zoning Commission, the applicant has ten days after preliminary plat approval and again after final plat approval to appeal a decision. Appeals from decisions of the Planing and Zoning Commission are made to the Board of County Commissioners. *Id.*, at 23.

The Court finds Valley County's objection that Judge Dale failed to properly apply *KMST* the facts of this case and to grant summary judgment to Valley County because the RDA payment was voluntary to be without merit. Regardless of the fact that Mr. Cruickshank states in his declaration that he believes agreement by White to pay road impact fees was voluntary, all other evidence (including but not limited to Mr. Cruickshank's deposition answers) establish the RDA requirements and the payments of monies under the RDA were not voluntary and that distinguishes this case from *KMST*.

The developer in *KMST* offered to put in the public roadway *before* such was required by the municipality. Here, the payment of the road impact fees as calculated under the RDA was driven by Valley County's CIP, not the developers' alleged voluntary offer to pay for road improvements. Valley County made it a mandatory condition of the CUP: enter a RDA and pay the related fees calculated by Valley County or the final plat would not be approved. Characterizing the payments as "voluntary" now that there is litigation appears to the Court to be an "after the fact" attempt to create a defense to the

impact fees imposed being found to be illegal.

Further, the Court agrees with Judge Dale that the facts presented in this case are closer to those presented in *Lochsa Falls* than in *KMST*. In this case, Valley County instructed the Planning and Zoning Commission to require developers to enter into road development agreements with the County as a condition for final plat approval. At the time conditional use permits are issued, the developer does not know what, if any, contribution will be required under the agreement. Once the developer learns of the fee required under the road development agreement, there does not appear to be any means of challenging the agreement other than failing to accept its terms and to the appear before the Planning and Zoning Commission having failed to satisfy all the conditions contained in the conditional use permit. If the developer desires to challenge the road development agreement, the only mechanism in place appears to be an appeal before the Board of County Commissioners–the very body that required the agreement in the first place.

Further, it is unclear from the record whether administrative remedies were in fact available. Regardless of whether White is ultimately entitled to relief on her state law claims, the Court finds Valley County has failed to carry its burden to establish no genuine issue of material fact exists regarding its argument the payment of impact fees was "voluntary" by White. Valley County is not entitled to judgment as a matter of law on this issue.

The Court understands the requirement for RDA's was arguably Valley County's "good faith" method of collecting road impact fees without complying with the IDIFA.

*See* Resolution 11-6, Dkt. 96-1. Certainly there is nothing wrong with municipalities requiring developers to pay the proportionate share of road improvements related to their developments, but such impact fees need to be in compliance with the state statute on impact fees or the imposition of such fees may be outside the authority of the municipality. But genuine issues of material fact exist which prevent Valley County from establishing as a matter of law the payment of impact fees for Phase 1 was voluntary.

### iii. Exhaustion

To the extent Valley County argues in its objections that the exhaustion requirement should prevent Plaintiffs state law claims, the Court finds the Defendant has failed to carry its burden that no genuine issues of material fact exist. It appears Valley County has conceded its ordinance allowing road impact fees was not compliant with the IDIFA and the argument the payments for Phase I were voluntary is disputed. If it is determined the payments were not voluntary and the road impact fees imposed were outside Valley County's authority, then the Court agrees with Plaintiffs at this stage in the litigation that an exception to the requirement exhaustion may apply in to the facts of this case. *See Regan v. Kootenai County*, 100 P.3d 615, 619 (Idaho 2004).

### iv. Elkhorn's State Law Claims

Elkhorn seeks a declaration from the Court that Valley County's use of road development agreements to collect money from developers as a condition for approval of proposed developments is a disguised impact fee, constitutes an unauthorized tax, and is therefore illegal under Idaho law. Elkhorn also requests that the Court enjoin Valley

**MEMORANDUM ORDER- 35**

County's practice of conditioning approval of land use applications upon developers entering into the above road development agreements.  Valley County moves for summary judgment on Elkhorn's claims, arguing that since Elkhorn remains in negotiations with the County concerning the road development agreement applicable to Phase II of the White Cloud project, Elkhorn's claims relate to future actions and are not ripe for adjudication.

This issue was also addressed in the Court's ruling on the second motion for a preliminary injunction, Dkt. 124. The Court agrees with Plaintiffs that the requirement for a development agreement has not been vacated by Valley County and final plat approval of Phase II is contingent upon a development agreement being entered.  Although Valley County has passed a resolution saying it will not charge impact fees, the resolution is not binding.  The declaratory relief request is appropriate since there has not been payment of road impact fees associated with Phase II and "pre-takings" actions are not permitted.

The question of whether Elkhorn's state law claims are ripe is a separate inquiry from whether Elkhorn's federal due process claim is barred by the United States Supreme Court's holding in *Williamson County*.  As discussed in detail above, in *Williamson County* the United States Supreme Court established special requirements (loosely referred to as "ripeness" requirements) for claims alleging that the implementation of land use regulations resulted in a taking requiring just compensation under the Fifth Amendment or a depravation of due process in under the Fourteenth Amendment. Conversely, the question here is one of subject matter jurisdiction; that is, whether a case

and controversy exists between Elkhorn and Valley County for the purposes of Article III of the United States Constitution.  The Court agrees with Judge Dale's analysis that Elkhorn's state law claims are ripe for the purposes of Article III.

Article III of the United States Constitution limits the exercise of the judicial power to actual cases and controversies. U.S. Const. art. III, § 2.  As a result of this provision, a case must be "ripe" before the Court asserts subject matter jurisdiction.  "The ripeness doctrine precludes federal courts from exercising their jurisdiction over an action that is filed before a real dispute exists between the parties." *Hawaii Newspaper Agency v. Bronster*, 103 F.3d 742, 746 (9th Cir. 1996).  According to the United States Supreme Court, the ripeness doctrine is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967).

Unless an actual controversy exists, the District Court is without power to grant declaratory relief. *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Id.*, at 273.  "[The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties

having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

In actions seeking relief under the Declaratory Judgment Act, courts have declined to entertain cases in which it is too early to determine what harm, if any, will be suffered by the claimant. See, e.g., *California v. Oroville-Wyandotte Irrigation District*, 409 F.2d 532 (9th Cir. 1969). Courts, however, "have not hesitated to issue a declaration if 'one or both parties have taken steps or pursued a course of conduct which will result in 'imminent' and 'inevitable' litigation." 10B Wright, Miller & Kane, Federal Practice and Procedure § 2757 (3d ed. 1998) (quoting *Bruhn v. STP Corp.*, 312 F. Supp. 903, 906 (D. Colo. 1970)).

In this case, Elkhorn has initiated the permitting process for Phase II of the White Cloud Project; it has appeared before the Planning and Zoning Commission; it has met all the conditions of approval in the conditional use permit with the exception that it has not entered into a road development agreement; and it has otherwise obtained all the necessary approvals to begin construction with the exception of final plat approval from the Valley County Commissioners. *See* Aff. of Scott Findlay, ¶ 14 (Dkt. 69.) While Valley County has passed a resolution indicating it will not charge road impact fees until it passes an IDIFA compliant ordinance, the county has not eliminated the requirement that a development agreement is entered. In other words, Elkhorn cannot receive final approval until it signs a development agreement.

Based on record before the Court, the Court finds the controversy between Elkhorn

and Valley County is sufficiently ripe for the purposes of Article III and for the Court to assert subject matter jurisdiction.

### G. Conclusion

For the reasons discussed in this Memorandum Order, the Court finds that Valley County has failed to carry its burden to establish no genuine issue of material fact exist such that summary judgment can be granted except on the federal law claims. Therefore, after fully considering the objections of the parties to the Report and Recommendation, summary judgment will be granted in part and denied in part.

### 4.      Valley County's Motion for Sanctions

In addition to its motion for summary judgment, Valley County also has filed a Motion for Rule 11 Sanctions. (Dkt. 55.)[3] The County argues that Plaintiffs have no legal basis to bring this suit, that Plaintiffs have been informed of these deficiencies, and that the Plaintiffs have nonetheless continued to pursue their claims. The Court finds Judge Dale's analysis on this motion is well-reasoned and consistent with this Court's determination that Valley County has not carried its burden on its motion for summary judgment on the state law claims. The Court adopts by reference Judge Dale's analysis on this motion.

---

[3] The record reflects that Valley County complied with Rule 11's safe harbor provision. Fed. R. Civ. Pro. 11(c)(2).

**MEMORANDUM ORDER- 39**

**5. Valley County's Motion for Reconsideration**

Valley County moves for reconsideration of the Order granting the Plaintiff's second motion for preliminary injunction related to Phase II. A party may seek reconsideration of a court order under either Fed. R. Civ. P. 59(e) or 60. In this case, Defendants have moved for reconsideration pursuant to both rules. The Ninth Circuit has determined the same analysis applies under both rules. *See Fidelity Fed. Bank, F.S.B. v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004) (discussing Fed. R. Civ. P. 60(b); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991) (discussing Fed. R. Civ. P. 59(e)). The motion must be filed within twenty-eight days pursuant to Fed. R. Civ. P. 59(e) and within a "reasonable time" pursuant to Fed. R. Civ. P. 60 (c). In this case, the motion was filed timely filed within the twenty-eight day deadline.

The Ninth Circuit has identified three reasons sufficient to warrant a court's reconsideration of a prior order: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact, to prevent manifest injustice. *School Dist. No. 1J, Multnomah County, OR.v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Upon demonstration of one of these three grounds, the movant must then come forward with "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Donaldson v. Liberty Mut. Ins. Co.*, 947 F. Supp. 429, 430 (D. Haw. 1996). Defendants appear to be arguing only the third ground – the need to correct clear or manifest error in law.

For the reasons discussed earlier in this Memorandum Order regarding the inverse condemnation claim and the fact the Court finds Plaintiffs' request for declaratory relief on Phase II is claim that can be heard by the Court, the Court finds Defendant has not come forward with facts or laws to induce the Court to reverse its prior ruling and the motion for reconsideration is summarily  is denied.   It is unclear to the Court as to why the parties have not completed the negotiations on the development agreement required for final plat approval for Phase II.  Valley County's Resolution 11-6 does not indicate that development agreements will not be entered into.  Therefore, the Court directs the parties to confer on this issue and try to complete negotiations regarding the development agreement for Phase II within the next sixty (60) days.  This may moot the need for the preliminary injunction and for the Court to rule on the request for a declaratory judgment.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (Dkt. 47) is **GRANTED IN PART AND DENIED IN PART** consistent with this Memorandum Order.

2. Defendant's Motion for Rule 11 Sanctions (Dkt. 55) is **DENIED**;

3. Defendant's Motion for Reconsideration (Dkt. 125) is **DENIED**.

4.  The parties are directed to meet and attempt to negotiate a development agreement for Phase II within the next sixty (60) days.  The parties are directed to file a status report regarding this issue at the conclusion of the sixty (60) days to inform the

Court whether the request for declaratory relief as to Phase II is still at issue.

5.  The parties are further ordered to participate in a telephonic scheduling conference with Judge Dale on  October 12, 2011 at 1:30 p.m. Mountain Time to set forth new deadlines to keep this case moving forward.   Plaintiffs' counsel shall initiate the call and will conference with the Court at 208-334-1504 after having all counsel on the line.

DATED:  **September 30, 2011**

Honorable Edward J. Lodge
U. S. District Judge